UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA JUNKERSFELD,<br><br>Plaintiff,<br><br>v.<br><br>PER DIEM STAFFING SYSTEMS, INC.,<br><br>Defendant. | Case No. 4:18-cv-07795-KAW<br><br>**ORDER GRANTING FINAL APPROVAL; ORDER GRANTING MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 92, 94, 95 |

On December 28, 2018, Plaintiff Teresa Junkersfeld filed a putative class action against Defendant Per Diem Staffing Systems, Inc. alleging violations of California labor laws. The parties settled and, on February 3, 2022, the Court granted preliminarily approval.

On June 2, 2022, Plaintiff filed a motion for approval of attorneys' fees and costs, incentive award, and settlement administration costs. On August 4, 2022, Plaintiff filed a motion for final approval of the settlement.

On September 8, 2022, the Court held a hearing, and, upon consideration of the parties' filings and the arguments presented, for the reasons set forth below, Plaintiff's motion for final approval and the motion for attorneys' fees and costs are GRANTED.

## I.     BACKGROUND

### A.     Factual Background

On December 28, 2018, Plaintiff Teresa Junkersfeld filed a putative class action against Defendant Per Diem Staffing Systemsp, Inc. alleging that Defendant improperly excluded per diem expense reimbursements from the calculation of the regular rate of pay for purposes of overtime and missed meal penalties in violation of California Labor Code §§ 510, 1194 (failure to pay overtime wages), California Labor Code § 226.7 (missed meal breaks), California Business

and Professions Code § 17200 (unfair business practices), and California Labor Code §§ 201, 203 (waiting time penalties). Plaintiff also alleges related representative PAGA claims. Additionally, Plaintiff later amended to add a putative collective action claim for unpaid overtime under the Fair Labor Standards Act.

Plaintiff worked for Defendant as a traveling health care professional and, as a "Traveler," was provided a weekly housing allowance and weekly per diem during her assignments. (Second Am. Compl., "SAC," Dkt. No. 69 ¶¶ 11, 13.) The allowance and per diem are not based on actual or approximate expenses. (SAC ¶ 17.) If a Traveler does not complete the required shifts, their per diem allowances are prorated "effectively reducing the value of the weekly housing and per diem allowances in proportion to the number of hours actually worked." (SAC ¶ 22.) Travelers remain away from home for the duration of their travel assignments, and incur housing, meal, and other travel expenses each week as a result of being away from home regardless of the number of shifts worked. (SAC ¶ 14.) As a result, Plaintiff alleges that the value of the per diems are improperly excluded from the regular rate of pay for the purposes of calculating overtime and missed meal period premiums. (SAC ¶¶ 24-25, 34-35.)

On March 31, 2020, Plaintiff filed the second amended complaint. The parties settled the lawsuit, and, on February 3, 2022, the Court preliminarily approved the proposed settlement and directed that notice be sent to the class members. (Preliminary Approval Order, Dkt. No. 91.)

On June 2, 2022, Plaintiff filed a motion for attorneys' fees and costs, incentive award, and settlement administration costs. (Pl.'s Fees Mot., Dkt. No. 92.) Defendant filed a statement of non-opposition. (Dkt. No. 93.) On August 4, 2022, Plaintiff filed the motion for final approval. (Pl.'s Notice of Mot., Dkt. No. 94; Pl.'s Mot., Dkt. No. 95.) Defendant filed a statement of non-opposition. (Dkt. No. 96.) On September 8, 2022, Plaintiff filed a supplemental declaration. (Suppl. Decl. of Kye D. Pawlenko, "Suppl. Pawlenko Decl.," Dkt. No. 99.)

### B. Settlement Agreement

The settlement agreement ("Settlement") defines the Class Members as

> All non-exempt hourly healthcare professionals employed by Defendant in California at any time between December 28, 2014 and July 1, 2021 who worked California overtime (i.e., over 8 hours per

2

day) in any workweek during this period and received a housing allowance and/or a per diem allowance.

(Settlement Agreement, Decl. of Kye D. Pawlenko ISO Mot. for Preliminary Approval, "Pawlenko Preliminary Approval Decl.," Dkt. No. 84-2, Ex. 2 at ¶ 3.1.) The putative class has 76 members. (Decl. of Jeremy Romero, "Romero Decl.," Dkt. No. 94-3 ¶ 12.)

Additionally, the settlement agreement defines Collective Action Members as:

> All non-exempt hourly healthcare professionals employed by Defendant in California at any time between December 28, 2015 and July 1, 2021 who worked FLSA overtime hours (i.e., over 40 hours) in any workweek during this period and received a housing allowance and/or a per diem allowance.

(Settlement Agreement ¶ 3.2.)

Under the terms of the Settlement, Defendant agrees to pay a non-revisionary gross settlement amount of $275,000 plus the employer's share of the payroll taxes. (Settlement Agreement ¶ 4.1.) Of the Settlement Amount, Plaintiff's counsel seeks an attorney's fee award of 25%, or $68,750, costs not to exceed $15,000, and settlement administration costs not to exceed $15,000. (Settlement Agreement ¶¶ 4.8, 4.9) The Settlement Amount also includes $10,000 in penalties under California's Private Attorneys General Act ("PAGA"), of which $7,500 shall be paid to the California Labor and Workforce Development Agency ("LWDA") and $2,500 will be part of the Net Settlement Amount for distribution to participating class members. (Settlement Agreement ¶ 4.10.) Additionally, $8,300 of the Net Settlement Amount will be allocated to the FLSA settlement collective. (Settlement Agreement ¶ 4.3.) The remainder of the Settlement Amount will be allocated to the settlement class. (Settlement Agreement ¶ 4.4.) The average individual settlement payment is estimated to be approximately $2,250. (Romero Decl. ¶ 14.)

Seven individuals opted into the collective. (Romero Decl. ¶ 11.) Settlement payments for the Collective are awarded a pro-rata share of the FLSA Net Settlement Amount based upon a percentage equal to the number of each Settlement Collective Member's FLSA overtime workweeks worked during the collective period divided by the total of all Settlement Collective Members' FLSA overtime workweeks worked during the period. (Settlement Agreement ¶ 4.3.) Each Settlement Collective Member's respective share of the FLSA Net Settlement Amount shall be calculated by multiplying the FLSA Net Settlement Amount by a fraction, the numerator of

which is the individual member's number of overtime workweeks and the denominator is the total number of all workweeks worked by the Settlement Collective. *Id.*

The remainder of the Settlement Amount shall be allocated to the Settlement Class ("Class Net Settlement Amount"). (Settlement Agreement ¶ 4.4.) Settlement payments for the Class Members are awarded a pro-rata share of the Class Net Settlement Amount is based upon a percentage equal to the number of each Class Member's overtime workweeks worked during the class period divided by the total of all Class Members' overtime workweeks worked during the period. (Settlement Agreement ¶ 4.4.) Each Class Member's respective share of the Class Net Settlement Amount shall be calculated by multiplying the Class Net Settlement Amount by a fraction, the numerator of which is the individual member's number of overtime workweeks and the denominator is the total number of all workweeks worked by the Settlement Collective. *Id.*

The claims being released by the Settlement are limited to all claims "which relate to the wage and hour and California Labor Code claims alleged in the Complaint or relate to other claims that could have been alleged based on the facts asserted in the Complaint." (Settlement Agreement ¶¶ 1.26, 7.1.) Similarly, all settlement collective members who opted-in to the Settlement will release all claims "which relate to the FLSA unpaid overtime claim alleged in the Complaint or relate to other FLSA claims that could have been alleged based on the facts asserted in the Complaint." (Settlement Agreement ¶¶ 1.27, 7.2).

No claim forms were necessary for any Class Member to participate in the settlement, but any Class Member could opt-out. (Settlement Agreement ¶ 4.5.) The average individual settlement payment, including any applicable FLSA payment, is currently estimated to be approximately $2,250. (Romero Decl. ¶ 14.) The highest individual settlement payment to be paid will be approximately $8,295.08. *Id.*

The settlement is non-reversionary, and any remaining, unclaimed funds will be sent by the Claims Administrator to the California State Controller's Office pursuant to the procedures of the State of California's Unclaimed Property Law, including that the undeposited funds be transferred in the name of the respective Class Member. (Settlement Agreement ¶¶ 4.1, 4.14.)

4

### C. Notice and Administration

On February 25, 2022, CPT Group, Inc. mailed the class notice to the class of 76 individuals utilizing the data provided by Class Counsel and after running a National Change of Address Search to update the address list. (Romero Decl. ¶¶ 5-7.) Of those, seven notice packets were returned as undeliverable of which one provided a forwarding address. (Romero Decl. ¶ 8.) CPT was able to perform a skip trace for the remaining six packets, and remailed all seven packets. (Romero Decl. ¶¶ 8-9.) As of the date of the filing of this motion, none of the notice packets are considered undeliverable. (Romero Decl. ¶ 9.)

The deadline for Class Members to submit their requests for exclusion ("opt-outs") was June 17, 2022. (Romero Decl. ¶ 7.) Of the delivered notices, no opt-outs were received by the response deadline. (Romero Decl. ¶ 11.) No objections were submitted or filed, and there are no outstanding disputes. *Id.*

As of the date of filing, CPT received 13 FLSA consent forms. (Romero Decl. ¶ 11.) Of those, one was deemed invalid as fraudulent and five were for class members who did not qualify as FLSA Collective Members, resulting in seven valid FLSA consent forms having been received. *Id.*

## II. LEGAL STANDARD

In deciding whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court considers the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Ninth Circuit also counsels that while "strong judicial policy favors settlements, the settlement may not be the product of collusion among the negotiating parties." *Churchill Vill., LLC*, 361 F.3d at 576 (internal quotation and modification omitted). Further, when a settlement agreement is negotiated prior to formal class certification, the court must be particularly vigilant

1  for signs of collusion, as "there is an even greater potential for a breach of fiduciary duty owed the

2  class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir.

3  2011).  Such signs include: (1) counsel receiving a disproportionate distribution of the settlement,

4  or where a class receives no monetary distribution, but class counsel is amply rewarded; (2) where

5  the parties negotiate a "clear sailing" arrangement for the payment of attorney's fees separate and

6  apart from class funds; and (3) where there is a reversion of fees to the defendant.  *Id.* at 947.

## III.  DISCUSSION

### A.  Final Approval

The Court finds that the *Churchill* factors support final approval of the Settlement.

First, Plaintiff's case presented several risks.  For example, Plaintiff ran the risk of not certifying the class for the claims alleged, as well as the risk that, after a case-specific inquiry, the per diem would not be included in the regular rate of pay. (Pl.'s Mot. at 9-10.)  Thus, the Court finds that the first *Churchill* factor favors final approval.

Second, in the absence of settlement, this case would likely be subject to significant further litigation. Plaintiff would still have to seek class certification, and disputes exist as to the merits of the case.  The Court concludes that the second *Churchill* factor favors final approval.

Third, as discussed above, Plaintiff faced a risk that she would not be able to obtain and maintain class certification after the Ninth Circuit's decision in *Clarke v. AMN Servs., LLC,* 987 F.3d 838 (9th Cir. 2021), which Defendant argues requires an individualized inquiry that is unsuited to class treatment. (Pl.'s Mot. at 11.)  This factor favors final approval.

Fourth, the amount offered by the Settlement is acceptable, as the Gross Settlement Amount is $275,000 plus Defendant's share of payroll taxes. (Pl.'s Mot. at 11.)  Plaintiff's damages analysis found that the additional wages found owing to the entire class is $361,231.57. (Pawlenko Decl. ¶ 20.)  Since the Settlement is 76% of the possible recovery, the Court finds that this factor favors final approval.

Fifth, it appears Plaintiff has engaged in sufficient investigation in this case.  Class Counsel has interviewed Plaintiff, reviewed documents provided by Plaintiff and Defendant, engaged in motion practice, analyzed the legal positions taken by Defendants, exchanged

information through discovery, and performed a damages analysis. (Pawlenko Decl. ¶¶ 8-12.) The Court concludes that the discovery conducted was adequate to allow the parties to make a fully informed decision on settlement. Thus, this factor favors final approval.

Sixth, Class Counsel attests that the settlement is fair and reasonable. (Pawlenko Decl. ¶ 22.) Class Counsel is experienced in this area, as the primary attorneys in this case have significant experience in employment matters. (Pawlenko Decl. ¶ 2-5.) Class Counsel's experience and support for the Settlement favors final approval.

Finally, the reaction of the class members to the proposed settlement has been positive. Per the settlement administrator, the class list included 76 individuals. (Romero Decl. ¶¶ 7.) Of the seven notices initially deemed undeliverable, CPT successfully skip traced the remaining addresses and none of the remailed notice packets were returned as undeliverable. (Romero Decl. ¶¶ 8-9.) No objections were filed with the Court, no opt-outs were received, and there were no disputes of work weeks from Class Members. (Romero Decl. ¶ 10.) As there have been no opt-outs and no individuals have objected to the Settlement terms, this last *Churchill* factor favors final approval.

Overall, the *Churchill* factors favor approval of the settlement. Additionally, the Court finds that the *Bluetooth* factors are satisfied, such that there is no evidence of collusion. Specifically, Class Counsel is not receiving a disproportionate distribution of the settlement, there is no "clear sailing" arrangement, and none of the Settlement Amount reverts back to Defendant.

Thus, having reviewed both the *Churchill* and *Bluetooth* factors, the Court finds that the Settlement is fair, adequate, and reasonable. Accordingly, the Court GRANTS Plaintiff's motion for final approval.

**B.    Sufficiency of Notice and Administrator's Costs**

CPT Group, Inc. provided notice to the members of the class in the form that the Court approved previously. The notice met the legal prerequisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the Court's order regarding court notice. The form of notice fairly, plainly, accurately, and reasonably

provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) an opportunity to opt-in for collective action members, a date by which they must opt-in, and information about how to do so; (7) the date and location of the final fairness hearing; and (8) the identity of class counsel and the provisions for attorney's fees and costs.

In the Settlement Agreement, CPT agreed to a payment not to exceed $15,000.00 to perform all duties required to administer the settlement. (Settlement Agreement ¶ 4.9.) Thus, the Court approves CPT's costs of $10,000.00, which will be paid out of the Settlement Amount.

### C. Attorneys' Fees

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Ninth Circuit has found, however, that courts still "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Where a settlement, such as this one, "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ." *Id.* Court may diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco*, Inc., No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pac. Enter. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

Here, Class Counsel seeks 25% of the common fund, or $68,750.00. (Pl.'s Fees Mot. at 2.) If the court applies the percentage method, then it typically calculates the lodestar as a "crosscheck to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg Co.,* No. CV-

09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters., Inc.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robart Half Internet, Inc.*, 1 Cal. 5th 480, 503–06 (2016) (under California law, "the percentage method to calculate [attorney's] fees in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

Based on counsel's submissions, the fee award is appropriate as a percentage of the common fund and is supported by a lodestar cross-check, given the results obtained, the case itself, the lack of objections to the settlement, and counsel's litigating the case on a contingency basis. *Cf. e.g., Bellinghausen*, 306 F.R.D. at 259–65 (N.D. Cal. Mar. 20, 2015) (approving attorney's fees equal to the benchmark 25 percent of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the settlement fund as attorney's fees "given the extensive litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarded one-third of the settlement fund as reasonable attorney's fees because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and strong result for the case").

As to the lodestar cross-check, the billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work.[1] *Cuviello v. Feld Entm't, Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad

---

[1] Suppl. Pawlenko Decl. ¶ 2, Ex. 1.

9

discretion in setting the reasonable hourly rates used in the lodestar calculation"); *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel provided billing records justifying the hours worked in the case, which was more than the percentage award sought. *See Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied").

Thus, applying the percentage method, as cross-checked by the lodestar method, the Court finds that the attorney's fees sought by Class Counsel is reasonable. The Court, therefore, GRANTS Plaintiff's request for an award of attorney's fees in the amount of $68,750.00.

### D. Attorneys' Costs

Plaintiff seeks $6,387.45 in costs, which is less than the $15,000.00 allotted in the Settlement Agreement. (Pl.'s Fees Mot. at 3; Settlement Agreement ¶ 4.0; Suppl. Pawlenko Decl. ¶ 3, Ex. 2.) Defendant does not oppose Class Counsel's request. The Court finds that the costs requested were reasonably incurred, and GRANTS Plaintiff's request for costs in the amount of $6,387.45.

### E. Plaintiff's Request for an Incentive Award

Finally, Plaintiff moves for an incentive award and general release payment in the amount of $2,750. (Pl.'s Fee Mot. at 5.) "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). An incentive award is designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. ... [C]oncerns over potential conflicts may be especially pressing where, ... the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal citation and quotation marks omitted).

1    In wage and hour cases, many courts in this district have held that a $5,000 incentive award is "presumptively reasonable." *See, e.g., Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *11 (N.D. Cal. Jan. 29, 2016) (awarding $5,000); *Odrick v. UnionBanCal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (same). Incentive awards may also be especially appropriate in wage and hour class actions, where a named plaintiff undertakes "a significant 'reputational risk' in bringing [an] action against [plaintiff's] former employer." *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing *Rodriguez*, 563 F.3d at 958-59).

Here, Plaintiff estimates that she spent more than 20 hours assisting with class counsel with this litigation and assumed the risk of loss. (Decl. of Teresa Junkersfeld, Dkt. No. 92-3 ¶¶ 5-10; Pl.'s Fees Mot. at 4.) Based on the record, the Court finds that Plaintiff is entitled to an incentive award and general release payment, and that the amount sought, which is less than the presumptive award, is reasonable.

Thus, the Court GRANTS the motion for incentive award and general release payment, and awards Plaintiff $2,750. The payment of the incentive award and general release payments shall be made in accordance with the terms of the Settlement Agreement.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for final approval of the class action settlement is GRANTED, and the Court (1) certifies the classes for settlement purposes only, (2) approves the settlement and authorizes the distribution of funds set forth above, (3) confirms the appointments of the class representative, class counsel, and CPT Group, Inc., (4) approves $68,750.00 in attorneys' fees, $6,387.45 in costs, $10,000 for CPT Group, Inc.'s administration costs, $2,750 to Plaintiff Teresa Junkersfeld as an incentive award, and (5) orders the parties and CPT Group, Inc. to carry out their obligations in the settlement agreement.

Finally, the Court retains jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, and

1    distribution of the Class Settlement Amount.  The Clerk shall close the case.

2         IT IS SO ORDERED.

3    Dated: September 12, 2022

4                                               KANDIS A. WESTMORE

5                                               United States Magistrate Judge

United States District Court
Northern District of California